# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY MARTEN, | ) | |
|     Plaintiff | ) | C.A. 13-266 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| DANIEL BURNS, et al., | ) | |
|     Defendants. | ) | |

## OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter.

## I. INTRODUCTION

### A. Relevant Procedural and Factual History

On September 3, 2013, Plaintiff Jeffrey Marten, an inmate incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), filed this *pro se* civil rights action pursuant 42 U.S.C. §1983 against Defendants Daniel Burns, Superintendent at SCI-Forest ("Burns"); E.W. Tice, Deputy Superintendent for Facilities Management at SCI-Forest ("Tice"); and A.W. Repko, Major of the Guard at SCI-Forest ("Repko").

Plaintiff claims that Defendants were deliberately indifferent to his health and safety in violation of his rights under the eighth amendment to the United States Constitution. In particular, Plaintiff alleges that, on May 15, 2013, he was physically assaulted and stabbed by an unidentified inmate during recreation period on the D-block concrete yard at SCI-Forest. (ECF No. 1, Complaint, at ¶¶ 2-3). Plaintiff alleges that the assault was undetected by prison guards

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 2, 7].

and surveillance cameras because it occurred in one of several "architectural blind spots" that are present in SCI-Forest's four concrete yards. (Id. at ¶¶ 4-7). Plaintiff alleges further that, unlike inmates attending SCI-Forest's main recreation yard, inmates attending recreation in the concrete yards are not required to pass through a metal detector, nor are they subject to random pat downs by custody staff. (Id. at ¶ 8). According to Plaintiff, the presence of architectural blind spots and the lack of adequate security procedures have resulted in "numerous assaults, stabbings, and other illegal activity in the concrete yards." (Id. at ¶ 9). Plaintiff claims that Defendants knew that the architectural blind spots in the concrete yards exposed inmates to an excessive risk of physical injury, yet they failed to take action to abate the risk. (Id. at ¶¶ 15-16).

Defendants filed an answer to Plaintiff's complaint [ECF No. 15], and the parties have completed discovery. On July 25, 2014, Defendants filed a motion for summary judgment [ECF No. 27], asserting that Plaintiff's claims fail as a matter of law because they are unsupported by the evidence of record. Plaintiff has since filed a brief in opposition to Defendant's motion [ECF No. 31]. This matter is now ripe for consideration.

### B. Standard of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out

specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are

any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir.

1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

## II. DISCUSSION

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997), quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994). To succeed on an Eighth Amendment claim alleging a failure to protect, a plaintiff must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;" (3) the defendant actually drew that inference; and (4) the defendant deliberately disregarded the apparent risk. Farmer, 511 U.S. at 834-37.

"Thus, in order to survive defendant's summary judgment motion, a plaintiff is obligated to produce sufficient evidence to support the inference that defendants 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" Jones at * 4, quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001). "It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that 'the defendant must have recognized the excessive risk and ignored it.'" Jones at *4, quoting Beers-Capitol, 256 F.3d at 138. Nonetheless, "Farmer made clear that a prison official defendant cannot escape liability by showing that he did not know that *this* particular inmate was in danger of attack: 'it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.'" Beers-Capitol v.

Whetzel, 256 F.3d 120, 131 (3d Cir. 2001), quoting Farmer, 511 U.S. at 843.

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997). "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." Id. "In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious." Jones v. Day, 2007 WL 30195 at *4 (W.D. Pa. Jan. 4, 2007). For instance:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-43 (citations omitted).

Here, Defendants assert that "Plaintiff can never show that the Defendants were deliberately indifferent to his safety," because there was constant video surveillance in the yard; the blind spots obstructed from the view of the cameras were "tiny;" the concrete yards were under constant visual observation by staff; and the small number of reported assaults in the concrete yards during the years 2012 and 2013 prove the absence of a longstanding, pervasive, well-documented history of assaults to which Defendants were deliberately indifferent. (ECF No. 28, Defendants' Brief, at pp. 5-7).

In support of these assertions, Defendants have submitted the Declaration of Paul Ennis, Major of Unit Management at SCI-Forest, who declares that (1) the RHU concrete yards are constantly monitored by hub surveillance cameras, which cover all areas of each yard, with the

exception of "very thin strips," approximately 1 – 1½ feet out from the left and right walls of each yard; (2) the concrete yards are under visual surveillance by the hub officer, who has a 360 degree view of the yards; "Rover" officers, who continually walk outside the fence of the four concrete yards; and housing unit staff and officers, who enter and move through the concrete yards on an unscheduled, random basis; and (3) the number of assaults in either the concrete or main yards are few in comparison to those that occur inside the facility. [ECF No. 30-1 at pp. 2-4].

In addition, Defendants have submitted, *inter alia*, Defendants' response to Plaintiff's fourth request for production of documents, which indicates that no extraordinary occurrence reports for inmate on inmate assaults from May 15, 2012 through May 15, 2013, were generated for the D-Unit concrete yard, where Plaintiff's incident occurred [ECF No. 30-1 at p. 45]; and SCI-Forest guilty misconduct assault and fight reports for 2012 and 2013, which indicate that, out of the 228 inmate-on-inmate fights of which SCI-Forest inmates were found guilty in those two years combined, only 34 occurred in the yards [ECF No. 30-1 at pp. 107-108].

In response, Plaintiff has submitted, *inter alia*: (1) the declaration of Chad Schultz, an inmate at SCI-Forest, who declares that he measured the blind spots, using the heel-to-toe method, and determined that the blind spot areas in the concrete yards, range from one to twelve feet along each wall as one moves away from the hub's center [ECF No. 31-1]; (2) Plaintiff's declaration declaring that he attended the concrete yards on a daily basis from the early part of 2010 to May 15, 2013, and rarely observed the "Rover" officer continuously walking outside of the fence of the concrete yards during recreation [ECF No. 31-3]; (3) Defendants' responses to Plaintiff's third request for admissions, in which Defendants admit that neither SCI-Forest staff

nor SCI-Forest security surveillance cameras observed Plaintiff's alleged assault in the D-Unit concrete yard on May 15, 2013 [ECF No. 31-4]; (4) a copy of an Inmate's Request to Staff Member that he sent to Defendant Burns on October 9, 2012, in which he advised the superintendent of the presence of the "architectural blind spots" in the concrete yards. This request was then copied by Defendant Burns to Defendants Repko and Tice [ECF No. 31-7]; and (5) the declaration of Idris Enlow, an SCI-Forest inmate who declares that, during the years 2012 and 2013, he personally witnessed at least six incidents of inmate-on-inmate assaults that went undetected by staff because they occurred in the "blind spot" areas [ECF No. 31-8].

The evidence submitted by Plaintiff thus indicates, at the very least, that Defendants knew of the existence of "architectural blind spots" in the RHU concrete yards, and establishes that assaults occurred in these blind spots that were not detected by surveillance cameras or staff. Although Defendants understandably emphasize that the incidence of reported attacks in the concrete yards pales in comparison to the number of attacks that occur within the facility, such statistics are by no means conclusive because they track only those assaults that are either observed or reported. Moreover, there is enough evidence of record to raise a genuine issue of fact as to whether the risk of undetected assaults due to the blind spots in the concrete yards was so obvious that Defendants should have taken more affirmative action to obviate the risk, regardless of statistical evidence to the contrary. For this reason, Defendants' summary judgment motion will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY MARTEN, | ) | |
| Plaintiff | ) | C.A. No. 13-266 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| DANIEL BURNS, et al., | ) | |
| Defendants. | ) | |

# **ORDER**

AND NOW, this 27th day of March, 2015,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment [ECF No. 27] is DENIED.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge